UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT JOHNSON,<br><br>    Plaintiff,<br><br>    v.<br><br>EXPRESS AUTO CLINIC, INC.,<br><br>    Defendants. | Case No. 18-cv-00464-KAW<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR DEFAULT JUDGMENT**<br><br>Re: Dkt. No. 55 |

Plaintiff Scott Johnson filed the instant suit against Defendants Express Auto Clinic, Inc., Abdulnasser Alsumairi, and Waled Aydeh, asserting violations of the Americans with Disabilities Act ("ADA") and Unruh Civil Rights Act. (Compl., Dkt. No. 1.) On April 5, 2019, Plaintiff filed a motion for default judgment as to Defendants Express Auto Clinic, Inc. and Aydeh (collectively, "Defendants").[1] (Plf.'s Mot. for Default Judgment, Dkt. No. 55.) The Court held a hearing on June 6, 2019, at which Defendants failed to appear. (Dkt. No. 65.) On June 13, 2019, Plaintiff filed a supplemental brief regarding attorney's fees. (Dkt. No. 66.)

Having considered the filings and the relevant legal authority, the Court GRANTS IN PART AND DENIES IN PART Plaintiff's motion for default judgment.

## I. BACKGROUND

Plaintiff is a C-5 quadriplegic who cannot walk and uses a wheelchair for mobility. (Compl. ¶ 1; Johnson Decl. ¶ 2, Dkt. No. 55-4.) Plaintiff has a disabled persons parking placard issued by the State of California, and drives a specially equipped and modified van that deploys a

---

[1] Plaintiff previously filed a notice of settlement as to Defendant Alsumairi. (Dkt. No. 52.) At the hearing, Plaintiff clarified that they did not seek attorney's fees attributable to work performed as to Defendant Alsumairi only, such that there would be no double recovery.

ramp so that he can wheel in and out of his vehicle. (Compl. ¶ 1; Johnson Decl. ¶ 3.) Because Plaintiff uses a ramp and needs to transition from his van to the parking access aisle, Plaintiff requires a properly configured van accessible parking space with a level access aisle. (Johnson Decl. ¶ 4.)

In May 2017, July 2017, October 2017, and December 2017, Plaintiff visited the Valero Gas Station at 3810 Broadway, Oakland, California to buy gas and snacks. (Compl. ¶ 16; Johnson Decl. ¶ 5.) The real property is owned by Defendant Express Auto Clinic, Inc., and Defendants Alsumairi and Ayedh own the Valero gas station. (Compl. ¶¶ 2-11.)

Although there was a parking space reserved for persons with disabilities, Plaintiff asserts that the parking space did not comply with the Americans with Disabilities Act Accessibility Guidelines ("ADAAG") during his visits. (Compl. ¶ 19; Johnson Decl. ¶ 6.) Specifically, there was no "No Parking" warning in the adjacent access aisle. (Compl. ¶ 20.) Additionally, the access aisle was not painted blue. (Johnson Decl. ¶ 6.) Each time Plaintiff visited, there were cars parked in the access aisle or in the parking space that did not have handicap placards. (Johnson Decl. ¶ 6.)

Inside the gas station, the path of travel in and throughout the merchandise aisles was not accessible because Defendants would place merchandise and merchandise display on the route of travel, narrowing the route of travel to less than 36 inches. (Compl. ¶ 27.) As a result, Plaintiff was unable to fit his wheelchair down the merchandise aisles. (Compl. ¶ 33; Johnson Decl. ¶ 7.) Additionally, the transaction counter was 38 inches high, with no portion lowered to 36 inches. (Compl. ¶¶ 29-32.)

On January 9, 2018, an investigator went to the Valero gas station, and found that there was no "No Parking" warning in the access aisle next to the handicapped parking space. (Louis Decl. ¶¶ 2-3, Dkt. No. 55-5.) The investigator also found that inside the Valero gas station, the path of travel was as narrow as 31 inches, and that the transaction counter was 38 inches high. (Louis Decl. ¶¶ 4-5.)

On January 21, 2018, Plaintiff filed the operative complaint, asserting violations of the ADA and Unruh Civil Rights Act. (*See* Compl.) On February 11, 2018, Defendant Express Auto

1    Clinic, Inc. was served by substitute service.  Specifically, on January 25, 2018, the summons and
2    complaint were left by a registered process server with Defendant Express Auto Clinic, Inc.'s
3    agent of service by leaving the papers with the manager.  (Dkt. No. 9 at 1.)  The summons and
4    complaint were then mailed on February 1, 2019.[2]  (*Id.* at 3.)  On February 16, 2018, Defendant
5    Ayedh was served by substitute service after two prior unsuccessful attempts.  Specifically, on
6    February 1, 2019, the summons and complaint were left by a registered process server with a
7    cashier at Defendant Ayedh's usual place of business.  (Dkt. No. 10 at 1.)  The summons and
8    complaint were then mailed on February 6, 2018.  *Id.* at 4.)

Defendant Express Auto Clinic, Inc.'s answer was due on March 5, 2018, and Defendant Ayedh's answer was due on March 9, 2018.  On March 7, 2018, Plaintiff moved for entry of default as to Defendant Express Auto Clinic, Inc.  (Dkt. No. 14.)  On March 9, 2018, the Clerk of the Court entered default against Defendant Express Auto Clinic, Inc.  (Dkt. No. 16.)  On March 12, 2018, Plaintiff moved for entry of default as to Defendant Ayedh.  (Dkt. No. 17.)  On March 16, 2018, the Clerk of the Court entered default against Defendant Ayedh.  (Dkt. No. 18.)  On October 3, 2018, counsel filed consents to magistrate judge jurisdiction on behalf of Defendants Express Auto Clinic, Inc. and Ayedh.  (Dkt. No. 38 ("CONSENT/DECLINATION to Proceed Before a US Magistrate Judge by Abdulnasser Alsumairi, Waled Ayedh, Express Auto Clinic, Inc.").)  Defendants Express Auto Clinic, Inc. and Ayedh, however, never moved to set aside entry of default.

On April 5, 2019, Plaintiff filed a motion for default judgment against Defendants, seeking $4,000 in statutory damages and $6,708 in attorney's fees and costs.  That same day, Plaintiff mailed the motion to Defendants.  (Dkt. No. 58 at 2.)  Counsel for Defendants also received notice of the filing through the Court's electronic filing system.  As of the date of this order, Defendants have not responded.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 55(b)(2) permits a court to enter a final judgment in a case

---

[2] Service of the summons and complaint by substitute service is deemed complete on the tenth day after mailing.  (Cal. Civ. Proc. Code § 415.20(a).)

3

following a defendant's default. *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 999 (N.D. Cal. 2001). Whether to enter a judgment lies within the court's discretion. *Id.* (citing *Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986)).

Before assessing the merits of a default judgment, a court must confirm that it has subject matter jurisdiction over the case and personal jurisdiction over the parties, as well as ensure the adequacy of service on the defendant. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). If the court finds these elements satisfied, it turns to the following factors ("the Eitel factors") to determine whether it should grant a default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decision on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986) (citation omitted). Upon entry of default, all factual allegations within the complaint are accepted as true, except those allegations relating to the amount of damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987). Where a default judgment is granted, the scope of relief "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. 54(c).

### III. DISCUSSION

#### A. Jurisdictional Requirements

In considering whether to enter default judgment, a district court must first determine whether it has jurisdiction over the subject matter and the parties to the case. *In re Tuli*, 172 F.3d at 712 ("When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties"). In his complaint, Plaintiff alleges a violation of a federal statute, the ADA, 42 U.S.C. § 12101 *et seq.* The Court thus has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331(a).

The Court has personal jurisdiction over Defendant Express Auto Clinic, Inc. as it is a California corporation. (*See* Compl. at 1; Mot. for Default Judgment, Exh. 5 at 3, Dkt. No. 55-7.)

The Court also has personal jurisdiction over Defendant Ayedh, who resides in Daly City, California, and owns and operates a California business located in Oakland, California. (Mot. for Default Judgment, Exh. 5 at 14; Compl. ¶¶ 7-11; Dkt. No. 10.) Venue is also proper because the real property where the violation occurred is located in this district. (Compl. ¶¶ 2, 16.)

Finally, service of process was proper. The case was filed on January 21, 2018, and Defendants Express Auto Clinic and Ayedh were served by substitute service. (Dkt. Nos. 9-10.) The proof of service of the complaint and summons were filed on February 13 and February 18, 2018. (*Id.*) Defendant Express Auto Clinic's default was entered on March 9, 2018, and Defendant Ayedh's default was entered on March 16, 2018. (Dkt. Nos. 16, 18.)

### B. Application to the Case at Bar

An analysis of the *Eitel* factors establishes that a default judgment is appropriate in this case.

#### i. *Eitel* Factor 1: Possibility of Prejudice to Plaintiff

If Plaintiff is not granted relief in this case, he will likely be left without other recourse. Such potential prejudice to Plaintiff militates in favor of granting a default judgment. *See PepsiCo., Inc. v. Cal. Sec. Cans.*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

#### ii. *Eitel* Factors 2 and 3: Meritorious Claim Alleged in Complaint

Plaintiff brings claims under the ADA and Unruh Civil Rights Act.

a. ADA

Per Title III of the ADA, "[n]o individual shall be discriminated against on the basis of a disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). To succeed on an ADA claim, the plaintiff must demonstrate that: "(1) she is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodations; and (3) the plaintiff was denied public accommodations by the defendant because of her disability." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007).

As to this third element, "[t]he concept of 'discrimination' under the ADA does not extend

only to obviously exclusionary conduct . . . . Rather, the ADA proscribes more subtle forms of discrimination--such as difficult-to-navigate restrooms and hard-to-open doors--that interfere with disabled individuals' 'full and equal enjoyment' or places of public accommodation." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 945 (9th Cir. 2011). Thus, "[d]iscrimination includes a failure to remove architectural barriers in existing facilities where such removal is readily achievable. *Molski*, 481 F.3d at 730. In particular, the ADAAG "lay out the technical structure requirement of places of public accommodations," providing objective standards for architectural features. *Fortune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1080-81 (9th Cir. 2004).

The Court finds that Plaintiff has established an ADA violation. First, Plaintiff is disabled, as he is a level C-5 quadriplegic who cannot walk and has significant manual dexterity impairments. (Compl. ¶ 1.) Plaintiff uses a wheelchair for mobility and has a specially equipped van. (Compl. ¶ 1.)

Second, Defendants are private entities that operate a place of public accommodation, the Valero gas station. (Compl. ¶¶ 2-11.) A gas station is identified as a place of public accommodation and subject to Title III of the ADA. 42 U.S.C. §12181(7)(F).

Finally, Plaintiff was denied public accommodations by Defendants because of his disability. When Plaintiff visited in May, July, October, and December 2017, there were no van accessible parking spots for Plaintiff to use that complied with the 2010 ADAAG. (Compl. ¶¶ 16, 19-24.) The 2010 ADAAG requires that a vehicle space must have an adjacent access aisle, which in turn must be marked so as to discourage parking in them. (2010 ADAAG §§ 502.2, 503.3.3.) Per the ADAAG, "[t]he method and color of marking are not specified by these requirements but may be addressed by State or local laws or regulations. Because these requirements permit the van access aisle to be as wide as a parking space, it is important that the aisle be clearly marked." (2010 ADAAG Advisory 502.3.3.) Here, although the access aisle had hatch marks, there was no other indication that parking was not permitted. (Compl. ¶¶ 20-23; Johnson Decl. ¶ 6.) Indeed, during Plaintiff's visits, there were vehicles without handicap placards parked in the access aisle, as well as when the investigator visited the station. (Compl. ¶¶ 20-21; Mot. for Default Judgment, Exh. 4 at 1, Dkt. No. 55-6 (picture of vehicle parked in the access aisle).) Thus, the access aisles

were not generally marked so as to discourage parking.

Additionally, the 2010 ADAAG requires that the clear width of walking surfaces shall generally be 36 inches minimum. (2010 ADAAG § 403.5.1.) Under specific circumstances, the clear width may be reduced to 32 inches. Here, the path of travel was narrowed to as little as 31 inches, which violates the 2010 ADAAG. (Compl. ¶ 27.) Plaintiff personally encountered this barrier during his 2017 visits. (Compl. ¶¶ 33, 35.)

Finally, the 2010 ADAAG requires that a business must provide a portion of a service counter that is 36 inches long and 36 inches high. (2010 ADAAG § 904.4.1.) Here, the service counter is 38 inches high, with no lowered portion. (Compl. ¶ 29.) Plaintiff personally encountered this barrier during his 2017 visits. (Compl. ¶¶33, 35.)

Accordingly, the Court finds that Plaintiff has sufficiently alleged an ADA claim as to the access aisle, the path of travel, and the service counter, and that Plaintiff personally encountered these barriers during his visits in 2017.[3]

b. Unruh Civil Rights Act

"Any violation of the ADA necessarily constitutes a violation of the Unruh Act." *Molski*, 481 F.3d at 731. Therefore, the Court finds that Plaintiff has sufficiently alleged an Unruh Act claim.

Accordingly, the second and third *Eitel* factors favor granting default judgment as to the barriers identified in the complaint.

**iii.** ***Eitel* Factor 4: The Sum of Money at Stake**

Under the fourth factor cited in *Eitel*, "the court must consider the amount of money at stake in relation to the seriousness of defendant's conduct." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177; *see also Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 500 (C.D. Cal. 2003). "When the amount at stake is substantial or unreasonable in light of the allegations in the

---

[3] Whether or not the removal of the barrier is "readily achievable" is an affirmative defense that is waived unless raised. *See Wilson v. Haria & Gogri Corp.*, 479 F. Supp. 2d 1127, 1133 (E.D. Cal. 2007) ("while defendant would ordinarily be entitled to prove that the removal of the alleged architectural barriers is not 'readily achievable' . . . the court holds that this is an affirmative defense, which defendant has waived.").

complaint, default judgment is disfavored." *Freligh v. Roc Asset Solutions, LLC*, Case No. 16-cv-653-MEJ, 2016 WL 3748723, at *6 (N.D. Cal. June 8, 2016) (citing *Eitel*, 782 F.2d at 1472). "However, when the sum of money at stake is tailored to the specific misconduct of the defendant, default judgment may be appropriate." *Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082, 1100 (N.D. Cal. 2014).

Here, Plaintiff seeks $4,000 in statutory damages and $6,708 in attorney's fees and costs. (Plf.'s Mot. for Default Judgment at 2.) Because this amount is not substantial, and the statutory damages are tied to Defendants' misconduct, this factor weighs in favor of default judgment. *See Love v. Griffin*, Case No. 18-cv-976-JSC, 2018 U.S. Dist. LEXIS 158355, at *12-13 (N.D. Cal. Aug. 20, 2018) (finding that this factor weighed in favor of default judgment where the plaintiff sought $9,195.00 in statutory damages under the Unruh Act and attorney's fees and costs).

### iv. *Eitel* Factor 5: Low Possibility of Dispute Concerning Material Facts

The facts of this case are relatively straightforward, and Plaintiff has provided the Court with well-pleaded allegations supporting its claims. Moreover, because Defendants have not appeared in this lawsuit, the Court has no way to know if any of the facts alleged in the complaint would be disputed if this matter were litigated on the merits. This factor thus does not weigh against entry of a default judgment. *See, e.g.*, *Elektra Entm't Grp. Inc. v. Crawford*, 266 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is only a remote possibility that any genuine issue of material fact exists."); *accord Philip Morris USA, Inc.*, 219 F.R.D, at 500; *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177.

### v. *Eitel* Factor 6: Excusable Neglect

The Court finds that there is no evidence of excusable neglect. Plaintiff served Defendants with the summons and complaint. (Dkt. Nos. 9-10.) Plaintiff also served Defendants by mail with notice of the instant motion for default judgment, and Defendants' counsel would have received electronic notice of the motion as well. (*See* Dkt. No. 58.) Despite ample notice of this lawsuit and Plaintiff's intention to seek default judgment, Defendants have failed to appear in this action. Thus, the record supports a conclusion that Defendants have chosen not to defend this action, and

1 not that the default resulted from excusable neglect. Accordingly, this *Eitel* factor favors the entry of a default judgment.

### vi. *Eitel* Factor 7: Strong Policy Favoring Decisions on the Merits

Defendants were given an opportunity to have this dispute decided on the merits, but did not respond to the Complaint. Defendants' failure to respond makes a decision on the merits impractical. The policy underlying the Federal Rules of Civil Procedure favoring a decision on the merits is outweighed by the other *Eitel* factors.

### vii. Conclusion

The Court concludes that the *Eitel* factors favor the entry of default judgment. Accordingly, the Court GRANTS Plaintiffs' motion for default judgment.

## IV. RELIEF SOUGHT

### A. Injunctive Relief

Plaintiff requests an injunction to remove the unlawful barriers. (Plf.'s Mot. for Default Judgment at 2.) Injunctive relief is available under both the ADA and the Unruh Act. *See Love*, 2018 U.S. Dist. LEXIS 158355, at *15. For violations of the ADA's accessibility provisions, "injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities." 42 U.S.C. § 12188(a)(2). Moreover, a plaintiff need not satisfy "[t]he standard requirements for equitable relief . . . when an injunction is sought to prevent the violation of a federal statute [that] specifically provides for injunctive relief." *Moeller v. Taco Bell*, 816 F. Supp. 2d 831, 859 (N.D. Cal. 2011) (internal quotations and citation omitted). Thus, a plaintiff need only demonstrate that "certain barriers at [d]efendant's establishment violated the ADA and that removal of th[ose] barriers was 'readily achievable'" in order to obtain an injunction. *Moreno v. La Curacao*, 463 Fed. Appx. 669, 670 (9th Cir. 2011) (quoting 42 U.S.C. § 12182(b)(2)(A)(iv)).

Here, the barriers do not appear to have been remedied yet. (*See* Compl. ¶¶ 21, 27, 32.) Accordingly, the Court GRANTS Plaintiff's request for injunctive relief as to providing: (1) compliant accessible parking spaces, (2) accessible paths of travel in and throughout the merchandise aisles, and (3) an accessible transaction counter.

9

**B. Damages**

Plaintiff seeks damages under the Unruh Act. "A violation of the right of any individual under the [ADA] shall also constitute a violation of this section." Cal. Civil Code § 51(f). The Unruh Act allows for monetary damages, stating that: "Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to Section 51 . . . is liable for each and every offense for the actual damages . . . up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000) and any attorney's fees that may be determined by the court . . . ." Cal. Civil Code § 52(a). A victim of discrimination, however, "need not prove she suffered actual damages to recover the independent statutory damages of $4,000." *Molski*, 481 F.3d at 731. Furthermore, "no showing of intentional discrimination is required where the Unruh Act violation is premised on an ADA violation" to award damages under the Unruh Act. *Lentini v. Cal. Ctr. for the Arts, Escondido*, 370 F.3d 837, 847 (9th Cir. 2004).

As discussed above, Plaintiff has established a violation of the ADA for his 2017 visits. Because Plaintiff has established a violation of the ADA, he has necessarily established a violation of the Unruh Act, and is therefore entitled to statutory damages of $4,000 for each visit, as well as attorney's fees. Plaintiff seeks only one statutory penalty of $4,000, which the Court grants.

**C. Attorney's Fees and Costs**

To determine the appropriate lodestar amount, the reasonableness of the hourly billing rate must be assessed. *Credit Managers Ass'n v. Kennesaw Life & Accident Ins. Co.*, 25 F.3d 743, 750 (9th Cir. 1994). In doing so, the court must look to the prevailing market rates in the relevant community for similar work by attorneys of comparable skill, experience, and reputation. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). Generally, the relevant community is the forum where the district court sits. *Id.* "[T]he burden is on the fee applicant to produce satisfactory evidence--in addition to the attorneys' own affidavits--that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Id.* at 980 (internal quotation omitted).

Plaintiff seeks attorney's fees of $5,988. In support, Plaintiff provides a declaration by

Dennis Price. (Price Decl., Dkt. No. 55-3.) Attorney Price's declaration includes summaries of the professional experience and qualifications of Attorneys Mark Potter, Russell Handy, Phyl Grace, Isabel Masanque, and Attorney Price. (Price Decl. ¶¶ 9-13.) The declaration also includes a billing statement describing the work performed by, and the hourly rates of, the attorneys listed above. (Price Decl. at 10.)

The Court finds that the billing rates sought are generally unreasonable. Attorneys Potter, Handy, and Grace seek hourly rates of $650, while Attorneys Masanque and Price seek hourly rates of $410. (Price Decl. at 10.) Plaintiff contends that in *Love v. Rivendell II, Ltd.*, Case No. 18-cv-3907-JST, Judge Laporte recommended the award of these rates on default judgment. (Memorandum of Points and Authorities at 13, Dkt. No. 55-1; Dkt. No. 66 at 1-2.) While true, the Court notes that in March 2019, Plaintiff's counsel requested significantly lower rates in *Johnson v. RK Investment Properties, Inc.* Case No. 18-cv-1132-YGR (KAW). There, Plaintiff sought hourly rates of $425 for Attorneys Potter, Handy, and Grace, and $350 for Attorneys Masanque and Price, for work performed between January 26, 2018 and November 16, 2018. (*See Johnson*, Dkt. No. 12-5 ("*Johnson* Price Decl.") at 8. Here, the majority of the work was performed between January 1, 2018 and March 12, 2018. (Price Decl. at 10.) Plaintiff provides no explanation for why the Court should award rates that are $60 to $225 greater than rates awarded for near identical work performed during the same time period, other than that they did not seek the higher rates before. (Dkt. No. 66 at 4.)

Moreover, in *Johnson v. AutoZone, Inc.*, Judge Hamilton recently rejected the higher rates now sought by Plaintiff's counsel, and awarded hourly rates of $425 for Attorneys Potter, Handy, and Grace, and $300 for Attorneys Masanque and Price. Case No. 17-cv-2941-PJH, 2019 WL 2288111, at *6-7 (N.D. Cal. May 28, 2019). While Judge Hamilton acknowledged the *Love v. Rivendell II* default judgment order, she explained that "that lone order granting an unopposed motion does not accurately reflect the prevailing rate in the community for work similar to this case." *Id.* at *6 n.4. Instead, "that order cited cases that concerned work substantially different from the work performed in this action," including complex class actions. *Id.* For example, *Elder v. National Conference of Bar Examiners* was a case that set new precedent and caused the

11

defendant to change a policy impacting hundreds of individuals each year, while *Civil Rights Education and Enforcement Center v. Ashford Hospital Trust, Inc.* was a complicated class action brought against 54 hotels. *Id.* Both these cases are relied upon by Plaintiff to justify the higher rates. Significantly, the work in this case was not complicated; Plaintiff's counsel has performed the same work in numerous cases, and the only motion practice here was an unopposed motion for default judgment.

Accordingly, the Court awards rates of $425 for Attorneys Potter, Handy, and Grace, and $350 for Attorneys Masanque and Price, consistent with the rates previously awarded in *RK Investment Properties, Inc.* and other recent ADA cases. *See AutoZone, Inc.*, 2019 WL 2288111, at *6-7; *Arroyo v. Aldbashi*, Case No. 16-cv-6181-JCS, 2018 WL 4961637, at *5 (N.D. Cal. Oct. 15, 2018).

| Attorney | Rate | Hours | Total: |
|---|---|---|---|
| M. Potter | $425 | 3.0 | $1,275.00 |
| R. Handy | $425 | 2.6 | $1,105.00 |
| I. Masanque | $350 | 1.1 | $385.00 |
| P. Grace | $425 | 0.9 | $382.50 |
| D. Price | $350 | 3.2 | $1,120.00 |
| | | | **$4,267.50** |

The Court finds that Plaintiff has submitted sufficient evidence in support of his request for costs, including $200 for an investigator, $400 in filing fees, and $120 in service costs. The Court therefore awards $720 in costs, for a total of $4,987.50.

### V.  CONCLUSION

For the reasons set forth above, and for good cause shown, the Court GRANTS IN PART AND DENIES IN PART Plaintiff's motion for default judgment. Judgment shall be entered in the amount of $8,987.50 ($4,000 in statutory damages, $4,267.50 in attorney's fees and $720 in costs). The Court also grants an injunction requiring Defendant to remedy the ADA violations as to the parking spaces, aisle width, and counter height, as required by the ADA.

IT IS SO ORDERED.

Dated: July 9, 2019

_____
KANDIS A. WESTMORE
United States Magistrate Judge

12